IN THE UNITED STATES DISTRICT COURT
               WESTERN DISTRICT OF ARKANSAS
                   FAYETTEVILLE DIVISION

**TERRI DAVIS**                                              **PLAINTIFF**

         **v.**           Civil No. 05-5095

**OZARKS ELECTRIC COOPERATIVE**                              **DEFENDANT**


                            **O R D E R**

     Now on this 10th day of April, 2006, comes on for consideration **Defendant's Motion For Summary Judgment** (document #9), and from said motion, the supporting documentation, and the response thereto, the Court finds and orders as follows:

     1.   Plaintiff brought suit pursuant to **42 U.S.C. §12117(a)** of the Americans with Disabilities Act ("ADA"), alleging that she is a qualified person with a disability, as that term is defined in the ADA, and that defendant refused to accommodate her disability and terminated her because of her disability. Plaintiff also alleges that defendant violates the ADA by requiring its employees to report the use of prescription drugs to their supervisors. Plaintiff seeks injunctive relief as well as compensatory and punitive damages.

     Defendant denied all the material allegations of the Complaint except the allegation regarding prescription drugs, and affirmatively pleaded that it requires employees to report the use of only those prescription drugs which "could interfere with safety-sensitive job duties."

Defendant now moves for summary judgment. The issues are fully briefed and ripe for decision.

2. Summary judgment should be granted when the record, viewed in the light most favorable to the nonmoving party, and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. **Walsh v. United States**, **31 F.3d 696 (8th Cir. 1994)**. Summary judgment is not appropriate unless all the evidence points toward one conclusion, and is susceptible of no reasonable inferences sustaining the position of the nonmoving party. **Hardin v. Hussmann Corp.**, **45 F.3d 262 (8th Cir. 1995)**. The burden is on the moving party to demonstrate the non-existence of a genuine factual dispute; however, once the moving party has met that burden, the nonmoving party cannot rest on its pleadings, but must come forward with facts showing the existence of a genuine dispute. **City of Mt. Pleasant, Iowa v. Associated Electric Co-op**, **838 F.2d 268 (8th Cir. 1988)**.

3. Pursuant to **Local Rule 56.1**, the parties have filed statements of facts which they contend are not in dispute. From those statements, the following significant undisputed facts are made to appear:

\* Defendant is an electric cooperative supplying electrical power to its members. Plaintiff worked for defendant from 1997 until November 4, 2004, first as a meter reader and

then, starting in October, 2000, as a field service representative.

* In addition to their regular work hours, defendant's field service representatives are expected to be "on call," meaning that they collect delinquent accounts and reset disconnected electrical meters after the regular workday. In practice, any given field service representative would be on call one week a month. Field service representatives are allowed to trade "on call" time with other employees.

* In October, 2004, plaintiff informed defendant that she had been diagnosed with Type II diabetes, and requested that she be relieved of "on call" duty for a period of time. Her treating physician, Dr. Ron Lee, sent defendant a letter about her condition. Defendant understood that plaintiff and her doctor felt it would be unsafe for plaintiff to drive after hours or take "on call" shifts for as much as six months or more.

* At defendant's request, plaintiff was seen by Dr. Gary Moffitt, who specializes in occupational medicine, on October 29, 2004. Dr. Moffitt concluded that plaintiff was managing her diabetes well, but sent a letter to defendant stating that if it was not safe for plaintiff to take "on call" shifts, she was not qualified to perform the essential functions of a field service representative.

\*   Defendant received a second letter from Dr. Lee in early November, stating that Dr. Lee felt it necessary for plaintiff to be relieved from "on call" duties for a period of time which might exceed six months.  On the basis of Dr. Lee's letters, Dr. Moffitt's report, and statements by plaintiff that she believed she could not safely take "on call" duties for six months or more, defendant terminated plaintiff.

\*   The only restrictions that were placed on plaintiff by any health care provider were certain dietary recommendations, and Dr. Lee's restriction that she not be on call until her diabetes was under control.

\*   Plaintiff now works at the University of Arkansas in a job that requires her to work forty hours a week, plus overtime.

4.  The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  **29 U.S.C. §12112(a).**

In order to prevail on her ADA claim, plaintiff must establish that she is disabled, as that term is defined by the ADA; that she is qualified, with or without reasonable accommodations, to perform the essential functions of her job; and that she suffered an adverse employment decision because of her

disability.  **Treanor v. MCI Telecommunications Corp.**, **200 F.3d 570 (8th Cir. 2000).**

Defendant contends that plaintiff is not a qualified individual with a disability, within the meaning of the ADA; that she was not qualified to perform the essential functions of her job with or without reasonable accommodation; and that the only accommodation she requested was to eliminate an essential function of her job, which it was not legally required to do.

5.  The phrase "qualified individual with a disability" is defined by the ADA as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  **29 U.S.C. §12111(8).**

The ADA defines "disability" in three ways.  A disability may be "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  **42 U.S.C. §12102(2).**

A physical impairment includes any "physiological disorder . . . sytems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine."  **29 C.F.R. §1630.2(h).**  Plaintiff's treating physician, Dr. Lee, testified that she has Type I diabetes, a

condition in which the body's cells are resistant to insulin and cannot use it to uptake sugar, resulting in a high level of sugar in the blood.  Clearly diabetes qualifies as a physical impairment under this definition.

Not all physical impairments result in disabilities, however.  The only impairments of significance for ADA purposes are those which substantially limit one or more major life activities, or are so regarded.

"Major life activities" are "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." **29 C.F.R. §1630.2(i).**  An impairment "substantially limits" a major life activity if it significantly restricts "the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." **29 C.F.R. §1630.2(j).**  Where the major life activity that is said to be substantially limited is working, a plaintiff

> must demonstrate an inability to work in a broad class of jobs, and show that he has suffered a significant reduction in meaningful employment opportunities as a result of his impairments.  An impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one.

**Wood v. Crown Redi-Mix, Inc., 339 F.3d 682 (8th Cir. 2003)**(internal citations and quotation marks omitted).

Defendant contends that plaintiff cannot show that she is, in fact, so limited. Without going into much detail, the Court notes its agreement with the proposition that plaintiff is not, in fact, substantially limited as to the major life activity of working. The uncontradicted evidence shows that plaintiff's doctor only restricted her from driving while working overtime after a full day's work, when she could be expected to be tired and not at her best, and only until she had learned how to manage her diabetes. But an actual limitation is not, as it has developed, what this case is about.

While a person with a physical impairment may not, in fact, be substantially limited in any major life activity, in many cases she is so regarded by others. Being "regarded as having such an impairment" means that an individual "[h]as a physical . . . impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation." **29 C.F.R. §1630.2(l).**

The focus of a "regarded as" claim is, thus, on the impairment's effect upon the attitudes of others. Such a claim is "intended to combat the effects of archaic attitudes, erroneous perceptions, and myths that work to the disadvantage of persons

with or regarded as having disabilities." **Wooten v. Farmland Foods**, 58 F.3d 382 (8th Cir. 1995).

In response to defendant's motion, plaintiff presented evidence tending to prove that the group who made the decision to terminate her (including Paul Dougan, Vice President of Member Relations and Marketing; Vonda Hart, Human Resources Administrator; Chris Coker, Training and Safety Coordinator; and Patrick Noggle, Member Relations Manager) all believed that, because plaintiff had diabetes, she was "out of control," she might pass out at any time, or that "I don't know what all" could happen. Plaintiff also presented medical evidence that contradicted these fears.

A jury could find, based on plaintiff's evidence, that the decision makers concluded plaintiff was unsafe on the job, either during regular hours or in overtime, even though both doctors who weighed in on the subject believed it was safe for her to continue working - and that the decision makers acted on the basis of their own erroneous perceptions about diabetes rather than on medical evidence.

This is the type of "erroneous perception" that a "regarded as" claim aims to remedy. It is also the type of erroneous perception that would restrict plaintiff from a broad class of

jobs, not just from working for defendant.[1]  The Court, therefore, concludes that plaintiff has shown the existence of a genuine question of material fact on the issue of whether she is a qualified individual with a disability as that concept is defined by the ADA.

6.   When evaluating whether plaintiff can produce evidence from which a jury could find that she was qualified to perform the essential functions of her job, two inquiries must be made: does she possess the requisite skills for the job, and can she perform the essential functions of the job, with or without reasonable accommodation.  **Canny v. Dr. Pepper/Seven-Up Bottling Group, Inc., 439 F.3d 894 (8th Cir. 2006).**

There does not appear to be any real dispute that plaintiff had the requisite skills for the job of field service representative.  Her most recent job evaluation showed that she met or exceeded expectations in every category.  The issue here is whether she could perform the essential functions of the job, and specifically, whether taking "on call" duty is an essential function of the job of a field service representative.

---

[1]Cf. the following citation from the Senate Report on the ADA, cited in the dissent to Sutton v. United Air Lines, Inc., 527 U.S. 471 (1999):

> [An] important goal of the third prong of the [disability] definition is to ensure that persons with medical conditions that are under control, and that therefore do not currently limit major life activities, are not discriminated against on the basis of their medical conditions.  For example, individuals with controlled diabetes or epilepsy are often denied jobs for which they are qualified.  Such denials are the result of negative attitudes and misinformation.

"Essential functions" are the "fundamental job duties of the employment position the individual with a disability holds or desires." They do not include "the marginal functions of the position." **29 C.F.R. 1630.2(n).**

Some of the factors that may be considered in determining whether a function is essential are:

> (i) The function may be essential because the reason the position exists is to perform that function;
> (ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or
> (iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

**29 C.F.R. §1630.2(n)(2).**

The types of evidence that may be considering in deciding whether a function is essential include:

> (i) The employer's judgment as to which functions are essential;
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
> (iii) The amount of time spent on the job performing the function;
> (iv) The consequences of not requiring the incumbent to perform the function;
> (v) The terms of a collective bargaining agreement;
> (vi) The work experience of past incumbents in the job; and/or
> (vii) The current work experience of incumbents in similar jobs.

**29 C.F.R. §1630.2(n)(3).**

On this issue, plaintiff offered evidence tending to show the following:

* that being "on call" involved going to the homes of delinquent members after hours, when they were ready to settle up, and resetting their electric meters;

* that resetting meters is a simple function which almost any employee can be quickly trained to perform;

* that employees from other departments were encouraged to volunteer to be on call;

* that employees could freely trade "on call" time with other employees, regardless of whether they were field service representatives or not; and

* that "on call" duty was not a part of the written job description of a field service representative.

Reasonable jurors could conclude, from the foregoing, that being on call was not an essential function of the job of a field service representative, and that plaintiff could perform all the essential functions of her job in spite of her doctor's restriction from being on call.

7. Defendant's last contention is that it was not required to accommodate plaintiff by relieving her of "on call" duty. Initially it argued that such was not required because of its position that "on call" duty is an essential function of the job of a field service representative. However, after plaintiff responded to its Motion For Summary Judgment, and it became apparent that plaintiff's case fell into the "regarded as"

category, it brought forth an additional argument, i.e., that the Eighth Circuit has held that 'regarded as' disabled plaintiffs are not entitled to reasonable accommodations.  **Weber v. Strippit, Inc., 186 F.3d 907 (8th Cir. 1999).**

The Court does not, however, believe this case turns on the issue of failure to make reasonable accommodation.  That is only one of many ways in which an employer can discriminate against a disabled employee.  See **29 U.S.C. §12112.**  Plaintiff need only demonstrate that she suffered an adverse employment action because of a disability, and termination is certainly an adverse employment action.

If a jury were to determine that "on call" duty is not an essential function of a field service representative's job, it could also conclude that plaintiff was qualified to perform the essential functions of her job without accommodation.  At that point, the remaining issue would be simply whether plaintiff suffered an adverse employment action because of her disability.

Plaintiff offered evidence from which it could be found that she was terminated not because she requested the accommodation of being relieved of "on call" duty, but because of erroneous perceptions by her supervisors about the nature of diabetes, and their belief that she could not do her job because she might pass out or "I don't know what all."

8. For all the foregoing reasons, the Court finds that **Defendant's Motion For Summary Judgment** (document #9) should be, and same hereby is, **denied.**

**IT IS SO ORDERED.**

                                      **/s/Jimm Larry Hendren**
                                      **JIMM LARRY HENDREN**
                                      **UNITED STATES DISTRICT JUDGE**